[Civ. No. 13200. Third Dist. Oct. 3, 1972.]

ATLAS THRIFT COMPANY, Plaintiff and Respondent, v.
SAM HORAN, Defendant and Appellant.

## COUNSEL

Friedman, Collard & Kauffman and William H. Collard for Defendant and Appellant.

Lobner & Bull and James M. Bull for Plaintiff and Respondent.

## OPINION

**CARKEET, J.**\*—This is an appeal from a deficiency judgment entered by the trial court against defendant. The parties will be referred to as "plaintiff" and "defendant" throughout this opinion.

The case is an action for deficiency judgment brought upon a security agreement under the Commercial Code. A primary defense at the trial was

\*Assigned by the Chairman of the Judicial Council.

that no deficiency judgment could be granted because of plaintiff's failure to comply with certain provisions of the Commercial Code.

There are two issues on appeal. The first is based upon an alleged erroneous interpretation and application by the trial court of section 9504, subdivision (3), of the Commercial Code. The second issue is whether or not granting of the deficiency judgment was an unlawful imposition of a penalty or forfeiture.

The facts surrounding the transactions in this case may be briefly summarized as follows: Plaintiff is an industrial loan company. Defendant was the operator and proprietor of a delicatessen business in Sacramento County and had done business with plaintiff on previous occasions and enjoyed a good financial reputation with plaintiff. Defendant's son-in-law, who had previously worked for defendant at the delicatessen, desired to set up his own delicatessen business in the Florin area of Sacramento County and defendant agreed to help him procure financing. Nicholas and Sons Enterprises agreed to furnish and install the necessary equipment and defendant's son-in-law needed approximately $10,000 to accomplish the financing. Defendant (and his son-in-law) discussed the matter with the president of plaintiff company, who was well-acquainted with defendant and aware of his satisfactory credit rating. Plaintiff agreed to finance the son-in-law by purchasing the contract of sale and entering into a security agreement covering a loan of $10,000. In a discussion concerning the signing of the final security papers, defendant declined to sign upon the ground that his lease at his present location forbade him to in any manner engage in a similar business within 25 miles of that location, but he assured plaintiff that he was backing his son-in-law and was a "silent partner." The loan was written up without the signature of defendant for a five-year period at $250 per month, and the equipment was installed.

The business soon encountered financial difficulties, and within a few months defendant was advised of a default and additional payments were made. Eventually, however, the son-in-law went through bankruptcy. Plaintiff petitioned and obtained a release of the collateral by the bankruptcy trustee and "sold" the fixtures and equipment at public "sale" in its own office. Plaintiff was the buyer. Notice of sale was given by publication, but neither defendant nor his son-in-law was served with notice of sale either personally or by mail as required by section 9504, subdivision (3), of the Commercial Code and by the security agreement itself. Plaintiff "purchased" the property for $2,000. Its market value was greatly in excess of that amount and was found by the trial court to be $12,500.

Defendant thereafter denied he was a silent partner; he also denied it at trial.

On the above evidence, as to some of which there was conflicting testimony, and on other more detailed evidence relating to dates, sums of money and the like, which need not be recited here, the trial court made its findings of fact. *None of its findings of fact are challenged on this appeal.* The factual findings which are most pertinent to this appeal, and which are agreed upon by the parties hereto, are as follows:

A. Defendant orally represented to plaintiff that defendant was a partner of his son-in-law in the restaurant which was then being contemplated by his son-in-law.

B. In reliance thereon, plaintiff loaned the sum of $10,000, to be repaid in 60 equal installments of $250 per month, but only two payments were made thereon.

C. Plaintiff purported to conduct a sale but did not send notice to defendant.

It is conceded that defendant is a "debtor" within the meaning of section 9105, subdivision (1)(d) of the Commercial Code.

The trial court reached certain conclusions of law *which are not disputed by the parties on appeal.* The conclusion most pertinent to this appeal is that plaintiff violated the provisions of paragraph 3(d) of plaintiff's exhibit 2 and section 9504 of the Commercial Code in that plaintiff did not send written notice to the defendants, or any of them, nor did plaintiff conduct a sale of collateral in a commercially reasonable manner. However, in spite of the violation of the agreement and the code section, the court computed the deficiency owed by defendant and rendered judgment.[1]

It is defendant's contention that since plaintiff did not conform to those portions of section 9504, subdivision (3), of the Commercial Code and of the security agreement itself, which also required personal notice "in accordance with" section 9504, subdivision (3), plaintiff is not entitled to a deficiency judgment against defendant as a matter of law. Defendant also argues that plaintiff is foreclosed from obtaining a deficiency judgment because it did not conduct the alleged "sale" in a commercially reasonable manner as required by section 9504, subdivision (3).[2] Defendant argues

---

[1] Other findings and conclusions fixed the balance owing on the agreement at the date of sale of the equipment at $15,000, and the actual value of the property at $12,500, not the $2,000 for which plaintiff had "purchased" it.

[2] Section 9504, subdivision (3), of the Commercial Code requires that a creditor must give notice of a sale, delivered personally or by mail, and that with respect to the sale the creditor must act "in good faith and in a commercially reasonable manner." The provision in the agreement itself requiring personal notice of sale is a statutory debtor's right under this section of the Commercial Code and need not be

further that plaintiff did not even prove a "sale" as contemplated by section 9504.

Plaintiff does not dispute the finding of the trial court that plaintiff failed to comply with section 9504, subdivision (3). It is plaintiff's position that as a matter of law a secured creditor is not deprived of his right to a deficiency judgment merely because he failed to give notice of sale to the debtor, or because he failed to sell the collateral in a commercially reasonable manner, or because he disposed of the collateral by means other than sale. In fact, plaintiff contends that a debtor is *precluded by law* from raising a failure to comply with section 9504, subdivision (3), as a defense to a deficiency action, because section 9507, subdivision (1), furnishes an adequate and exclusive remedy to a debtor when the secured party does not comply with notice or sale requirements of section 9504, subdivision (3). Section 9507, subdivision (1), provides that if the collateral is disposed of by the secured party without proceeding in accordance with the default requirements of the code (including § 9504) the debtor has the right to recover from the secured party any loss caused by the failure to so comply. Because of this right to affirmative relief given to a debtor at some future time when a sale has been unlawfully made, plaintiff contends that the section prevents or prohibits using a violation of any legal requirement of sale procedure (such as § 9504) as a defense to a deficiency action.

The legal issue thus raised is apparently one of first impression in California. However, it has been raised and dealt with in other states which have adopted the Uniform Commercial Code. While the code is uniform, its interpretation in this respect is not.[3]

"The Uniform Commercial Code, adopted in California at the 1963 Regular Session of the Legislature, is a comprehensive modernization of the law governing commercial transactions. It is designed to simplify and clarify the law, and to secure uniformity in the adopting states.

"The section numbers in the official text of the Uniform Code are a composite number, such as section 3-101, in which the digit preceding the

---

repeated in the security agreement. (See Cal. Commercial Law: III (Cont.Ed.Bar) § 9.42, pp. 473-474.) The parties to this appeal accordingly base their arguments on construction of the code itself.

[3]"In sum, the weight of authority may well be that the failure to comply with Part 5 of Article 9 precludes a creditor's recovery of a deficiency; at worst, the scales of authority are very nearly in balance on that point. None of the cases which are cited for the proposition that a misbehaving creditor retains a right to a deficiency is strong authority. All such cases seem to have assumed that conclusion; none apparently has arrived at it in the face of a litigated dispute on that issue." (White: *Representing The Low Income Consumer In Repossessions, Resales And Deficiency Judgment Cases* (1970) 64 Nw.U.L.Rev. 808, 832-833.)

dash designates the article (Division in California) in which the section appears. In the California Code the dash has been removed from the section numbers so that section 3-101 of the Uniform Code becomes section 3101 of the California Code, Section 4-212 becomes 4212, and so on." (West's Ann. Cal. Codes, Foreword, Com. Code, Vol. 23A (1964).)

All references to section numbers contained herein, unless otherwise indicated, are to the Uniform Commercial Code as adopted by the California Legislature in 1963 (Stats. 1963, ch. 819).

Section 1102 provides:

"(1) This code shall be liberally construed and applied to promote its underlying purposes and policies.

"(2) Underlying purposes and policies of this code are

". . . . . . . . . . . . . . . . . . . .

"(c) To make uniform the law among the various jurisdictions.

". . . . . . . . . . . . . . . . ."

Division 9 of the code deals with "Secured Transactions; Sales of Accounts, Contract Rights and Chattel Paper" (§§ 9101-9507). Chapter 5 of division 9 (§§ 9501-9507) deals with defaults under secured transactions.

Section 9504 provides in subdivision (1) for the disposition of the collateral by the creditor, after a default, and the application of the proceeds, in the same language as the official text of section 9-504 of the Uniform Commercial Code (1962 official text). And subdivision (2) of section 9504 is the same as the official text of section 9-504 of the Uniform Commercial Code and provides that, unless otherwise agreed, the debtor is liable for any deficiency.

Subdivision (3) of section 9504 was changed in the California version by setting forth specifically what constitutes timely notice in the place of the provision of subsection (3) of section 9-504 of the Official Text which provides merely for "reasonable notice." The change was made to avoid controversy in each case as to whether the notice was reasonable by substituting a definite standard.[4]

A creditor's misbehavior in repossessing or reselling collateral can bring upon him a variety of unpleasant consequences. (White: *Representing The*

---

[4]Sixth Progress Report to the Legislature by the Senate Fact Finding Committee on Judiciary (1959-1961) Part 1, The Uniform Commercial Code, page 587.

*Low Income Consumer In Repossessions, Resales And Deficiency Judgment Cases* (1970) 64 Nw.U.L.Rev. 808 at p. 825.) One such result is the right given debtors under section 9507, which provides: "(1) If it is established that the secured party is not proceeding in accordance with the provisions of this chapter disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this chapter."

Briefly recapitulated, it is plaintiff's contention that section 9507 gives to defendant a remedy that was intended to be exclusive and that in view of this remedy it is not a defense to an action for deficiency judgment that the creditor failed to comply with the notice requirements of section 9504, subdivision (3), or for that matter, that he failed in any manner to conduct the sale in a commercially reasonable manner.

In answer to this, defendant relies on section 1103, which provides as follows: "Unless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

In the light of section 1103 defendant argues that since section 9507 is not stated to be an exclusive remedy, it is cumulative and the law of California relating to the consequences of failure to give notice of sale of such collateral applies.

California law prior to the Uniform Commercial Code clearly provided that a creditor who disposed of property after default, without following the notice requirements of the mortgage agreement, has extinguished the mortgage lien and is thus *barred* from recovering a deficiency judgment. (*Metheny* v. *Davis* (1930) 107 Cal.App. 137 [290 P. 91]; *Rocky Mountain Export Co.* v. *Colquitt* (1960) 179 Cal.App.2d 204 [3 Cal.Rptr. 512].)

The trial court found that plaintiff did not comply with the notice requirements of section 9504, subdivision (3), nor with the requirements of clause 3(d) of the Security Agreement itself, and further found that defendant was a debtor within the meaning of section 9105, subdivision (1)(d), and was therefore entitled to notice. Notwithstanding such failure and conceding that the sale was not held in a commercially reasonable

manner, the trial court gave deficiency judgment in reliance upon certain authorities cited in its "Notice of Intended Decision."[5]

The authorities are divided on the issues here involved. While we shall make note of the various decisions of other jurisdictions, we find it unnecessary to set forth here a lengthy written analysis of them. Suffice it to say briefly that the cases which support plaintiff's position are based largely on the reasoning of plaintiff set forth hereinabove, to wit, in brief, that failure to comply with section 9504, subdivision (3), is not a defense to a deficiency action because section 9507, subdivision (1), gives to a wronged debtor a cause of action against the offending creditor. Their reasoning is best reflected by the language of the court in *Conti Causeway Ford* v. *Jarossy* (1971) 114 N.J.Super. 382 [276 A.2d 402, 404-405]: "[W]here reasonable notice of sale has not been given, the spirit of commercial rea-

---

[5] ". . . By failing to give notice to the defendant the plaintiff did not lose the right to recover a deficiency judgment. T & W Ice Cream, Inc. v. Carriage Barn, Inc., 258 A.2d 162, 6 U.C.C. Rep. 1230 (N.J.Super. 1969); Weaver v. O'Meara Motor Co., 452 P.2d 87, 6 U.C.C. Rep. 413 (Alas. 1969); Baker v. Horn, 432 S.W.2d 21, 5 U.C.C. Rep. 793 (Ark. 1968); 1 P. Coogan, Secured Transactions under U.C.C. § 8.06 (1969 Cum. Supp. at 45-46). Contra, Braswell v. American National Bank, 161 S.E.2d 420 (Ga.App. 1968). But as the cited cases show, the failure to give notice requires the plaintiff, as the secured party, to assume the burden of proving the amount that should have been obtained on the sale of the collateral.

"If all that had been shown was the sale price of the collateral, there would have been a presumption that the collateral is worth at least the amount of the debt. Norton v. National Bank of Commerce, 398 S.W.2d 538, 3 U.C.C. Rep. 119 (1966).

"But even treating the presumption as one affecting the burden of proof, Evidence Code § 605, and despite the failure of either party to offer proper appraisal evidence, it appears that the plaintiff has established that the collateral was not worth the amount of the debt. The plaintiff's contention that the collateral was worth but the $2,000 realized at the ceremonial sale on April 17, 1970, can, of course, not be accepted, because one week before the sale the plaintiff had agreed to sell the property to Opper and Silk for $5,000, Def. Ex. L, and later did sell it to them for that amount. Under cross-examination the plaintiff testified that the collateral was worth between $10,000 and $12,000. And in the Security Agreement, Pff. Ex. 2, prepared by the plaintiff, the price of the collateral is stated as $12,500. The Agreement refers to the 'Attached Lists' prepared by Mr. Nicholas, which give a value of $9,267.69 installed without electrical and plumbing connections. The difference between the last figure and $12,500 apparently reflects the value of those connections. Considering the lack of evidence to show that the collateral was 'sold in conformity with reasonable commercial practices', U.C.C. § 9507(2), it seems appropriate to accept the figure of $12,500 as in the nature of an admission by the plaintiff.

"The Court intends, therefore, to give judgment for the plaintiff in the amount of $2,000 computed as follows:

| | | |
|---|---:|---:|
| "Amount due after default as per Pff.Ex. 2 P. 3(a) | | 15,000 |
| Less: | | |
| Payments made | $ 500 | |
| Value of collateral | 12,500 | 13,000 |
| | | 2,000" |

sonableness requires that the secured party not be arbitrarily deprived of his deficiency but that the burden of proof be shifted to him to prove that the sale resulted in the fair and reasonable value of the security being credited to the debtor's account."[6]

On the other hand, defendant cites cases which support his argument that failure of a creditor to comply with the requirements of section 9504, subdivision (3), is a defense in a deficiency action. These cases are based primarily on the reasoning that personal notice is mandatory and is a condition precedent to the secured party's recovery of a deficiency judgment. (*Edmonson* v. *Air Service Company* (1971) 123 Ga.App. 263 [180 S.E.2d 589] (8 U.C.C. Rep. 916), and is essential because without notice the debtor has been denied his right of redemption given him by section 9506, and also on the reasoning that section 9507 has nothing to do with defenses to a deficiency action, but is intended only to provide an affirmative cause of action to recover for a loss that has already been sustained—not a substitute for a defense to an action for a deficiency.[7]

Decisions from the State of Massachusetts furnish a good indication

---

[6]See also *Grant County Tractor Co., Inc.* v. *Nuss* (1972) 6 Wn.App. 866 [496 P.2d 966] (10 U.C.C.Rep. 1104); *First National Bank of Belleview* v. *Rose* (1972) 188 Neb. 362 [196 N.W.2d 507] (10 U.C.C.Rep. 903); *Norton* v. *National Bank of Commerce of Pine Bluff* (1966) 240 Ark. 143 [398 S.W.2d 538] (3 U.C.C.Rep. 119), *Alliance Discount Corp.* v. *Shaw* (1961) 195 Pa.Super. 601 [171 A.2d 548]; *T & W Ice Cream, Inc.* v. *Carriage Barn, Inc.* (1969) 107 N.J.Super. 328 [258 A.2d 162] (6 U.C.C.Rep. 1230); *Weaver* v. *O'Meara Motor Company* (1969 Alaska) 452 P.2d 87 (6 U.C.C.Rep. 415); *Massey-Ferguson Finance Corp.* v. *Hamlin* (1971 Tenn.) 9 U.C.C.Rep. 142; *Mallicoat* v. *Volunteer Finance & Loan Corp.* (1966) 57 Tenn.App. 106 [415 S.W.2d 347] (3 U.C.C.Rep. 1035, 4 U.C.C.Rep. 49); *Morris Plan Company of Bettendorf* v. *Johnson* (1971 Ill.App.) 271 N.E.2d 404 (9 U.C.C.Rep. 728); *Cities Service Oil Co.* v. *Ferris* (1971 Mich.Dist.Ct.) 9 U.C.C.Rep. 899; *Leasing Associates, Inc.* v. *Slaughter & Son, Inc.* (8th Civ. 1971) 450 F.2d 174 (9 U.C.C.Rep. 1292); *Universal C.I.T. Credit Co.* v. *Rone* (1970) 248 Ark. 665 [453 S.W.2d 37] (7 U.C.C.Rep. 847); 1 Coogan, Secured Transactions Under The Uniform Commercial Code (1971 Cum.Supp.) section 8.06, page 60: "Since the Code specifies in section 9-507 that the secured party is liable in damages, there seems to be no need to add through judicial gap-filling the additional penalty of a right to recover the deficiency. . . ."

[7]"[T]he act of the secured party, in selling the collateral without strict compliance with the notice of sale provisions, precludes the purchaser or owner from exercising his right of redemption under Section 109A-506, and for that reason the secured party cannot recover for the deficiency." (*Braswell* v. *American National Bank* (1968) 117 Ga.App. 699 [161 S.E. 420, 422]; see also *Leasco Data Process. Equip. Corp.* v. *Atlas Shirt Co.* (1971) 66 Misc.2d 1089 [323 N.Y.S.2d 13] (9 U.C.C.Rep. 161); *Foundation Discounts, Inc.* v. *Serna* (1970) 81 N.M. 474 [468 P.2d 875] (7 U.C.C.Rep. 854); *Cities Service Oil Co.* v. *Ferris* (1971 Mich. Dist. Ct.) 9 U.C.C. Rep. 899; *Jefferson Credit Corporation* v. *Marcano* (1969) 60 Misc.2d 138 [302 N.Y.S.2d 390]; *Cox Motor Car Company* v. *Castle* (1966 Ky.) 402 S.W.2d 429; *Skeels* v. *Universal C. I. T. Credit Corporation* (W.D.Pa. 1963) 222 F.Supp. 696 (1 U.C.C.Rep. 639), vacated on other grounds, 335 F.2d 846 (2 U.C.C.Rep. 256); also see *C.I.T. Corporation* v. *Haynes* (1965) 161 Me. 353 [212 A.2d 436]; *Associates Discount Corp.* v. *Cary* (1965) 47 Misc.2d 369 [262 N.Y.S.2d 646].)

of uncertainty in the legal groping for a proper interpretation, construction and application to be given to the two Uniform Commercial Code sections with which we are primarily concerned. In 1964 one Massachusetts appeal court held failure to give notice as required by section 9504 did not bar a deficiency judgment. (*Abbott Motors Inc.* v. *Ralston* (1964) 28 Mass.App. Dec. 35 (5 U.C.C.Rep. 788).) In 1968 another Massachusetts appeal court heard another case with the same issue and ruled that a deficiency judgment was barred. (*One Twenty Credit Union* v. *Darcy* (1968) (Mass.App. Div.) 5 U.C.C.Rep. 792.)

Some light may be shed upon this confusion by considering the meaning of section 1103 of the Commercial Code, which provides in effect that unless displaced by particular provisions of the code, the prior commercial laws shall supplement the code provisions. Since section 9507 is not expressly made an exclusive remedy, and does not specifically purport to have any bearing on deficiency judgments, it is of significance to recall that under California law a mortgagee who disposed of mortgaged property after default, without following the notice requirements of the statute and mortgage, was barred from recovering a deficiency judgment. (*Metheny* v. *Davis, supra,* 107 Cal.App. 137; *Rocky Mountain Export Co.* v. *Colquitt, supra,* 179 Cal.App.2d 204.)

We are persuaded that the better reasoning and the ends of justice require the acceptance of defendant's contention and reversal of the judgment. In arriving at this decision we are in essential agreement with the New York court which dealt squarely with this issue in *Leasco Data Process. Equip. Corp.* v. *Atlas Shirt Co.* (1971) 66 Misc.2d 1089, 1091-1092 [323 N.Y.S.2d 13, 16] (9 U.C.C.Rep. 161, 163-164), wherein that court stated as follows: "The plaintiff's contention that a secured creditor's right to a deficiency judgment under the described circumstances is limited only by the remedies set forth in 9-507 seems to me a tenuous one indeed, apart from the fact that no such effect was ever accorded the corresponding section in the Uniform Conditional Sales Act, Former Pers.Prop.Law, § 80-e.

"Preliminarily, it may be noted that Section 9-507 makes no direct allusion to the circumstances under which a right to a deficiency judgment may arise.

"More significant is the special nature of the language used: 'the debtor or any person entitled to notification . . . has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part.' If this were intended to authorize a defense to an action for a deficiency judgment, it is hard to envisage language less apt to that purpose. The words used plainly contemplate an affirmative action to

recover for a loss that has already been sustained—not a defense to an action for a deficiency. The distinction between an affirmative action and a defense is a familiar one, phrases that articulate the different concepts are familiar in the law, and it is unlikely that the experienced authors of the [Uniform Commercial Code] intended by the above language to provide a limited defense to an action for a deficiency judgment based on a sale that had violated the simple and flexible statutory procedure.

"It seems far more probable that this latter section has nothing whatever to do with defenses to an action for a deficiency, since it was never contemplated that a secured party could recover such a judgment after violating the statutory command as to notice."

■ The most natural and reasonable construction of the statutory language, in the light of the legal background, the realities of the relationships involved between secured creditors and debtors who have defaulted and their respective financial resources for engaging in litigation, all lead to the conclusion that *the right to a deficiency judgment depends on compliance with the statutory requirements concerning dispositions and notice.*

The rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment.

Plaintiff in the instant case clearly failed to comply with section 9504, subdivision (3), of the Commercial Code in at least two respects. He failed to give the required notice and he failed to conduct the sale in a commercially reasonable manner. We hold this failure to be a bar to a deficiency judgment where, as here, such failure was raised as an affirmative defense.

■ While in our view the judgment must be reversed for the reason stated, we address ourselves to defendant's second contention. Defendant contends that the granting of the deficiency judgment was an unlawful imposition of a penalty or forfeiture, based upon the fact that the payment of the secured obligation by defendant was to have extended over a five-year period, but due to his default and the acceleration clause, he was required to pay the full interest although he had the loan for only eight months before he defaulted. He contends that a portion of the $2,000 judgment against him is a penalty or forfeiture because he computes the interest rate at 75 percent per annum for eight months. He argues that some courts have held that, even though there is no usury question because the lender (a loan company) is exempt from usury laws, there is an unlawful penalty in charging him "after default interest," where the facts show that plaintiff has not complied strictly with the requirements of the statute or contract involved. Defendant contends that on default the parties to

this contract should be held to "never have intended" that the lender should be able to collect the unearned interest when the note was accelerated. Defendant's citations are to two California cases, one involving the usury laws, and one involving nuisance abatement, wherein a statute imposing a daily penalty for maintaining the nuisance was involved. (*Haines* v. *Commercial Mortgage Co.* (1927) 200 Cal. 609 [254 P. 956, 255 P. 805, 53 A.L.R. 725]; *County of Sierra* v. *Butler* (1902) 136 Cal. 547 [69 P. 418].)

While the California cases are not directly on point, defendant cites out-of-state cases collected in 84 American Law Reports 1283, to the effect that while collection of interest to the date of default under an acceleration clause is lawful, any excess interest charged on the principal after the date of default is penal and can be neither collected nor retained. (See also 100 A.L.R. 1431.) However, it is pointed out in cases collected in 45 American Jurisprudence 2d, Interest and Usury, section 183, pages 145-146, that there is a split of authority on this point, and some jurisdictions construe acceleration provisions so as to give the lender the right on default to demand payment of the debt with interest for the full period of the loan, the theory being that this may be said to be in the nature of a penalty but is one agreed to and from which the borrower can relieve himself by a prompt payment of installments when due.

While there do not appear to be any California cases which precisely settle the question, we are of the view that the situation is analogous to the "collection under duress" cases (forcing to sell to avoid "after default interest") such as *Steffen* v. *Refrigerator Discount Corp.* (1949) 91 Cal. App.2d 494 [205 P.2d 727], where it was held that such collection after default is a payment under duress when enforced upon the debtor who has to sell in order to cure his default. We also are of the view that the situation is analogous to the foreclosure cases, such as *Mann* v. *Earls* (1964) 226 Cal.App.2d 155 [37 Cal.Rptr. 877], where it was held that the court in an equitable action will not enforce grossly unfair and unconscionable demands or penalties or forfeitures.

The judgment allowing a full five years' interest for eight months' use of the loaned funds seems clearly under the circumstances of this case to be in the nature of a forfeiture or penalty.

The judgment is reversed.

Regan, Acting P. J., and Janes, J., concurred.