AMERICAN STATE INSURANCE COMPANY, a corporation, Plaintiff and Appellant,

v.

MILLER, ADAMS AND CRAWFORD, dba MAC Construction Company, a corporation, et al., Defendants and Respondents.

No. 14444.

Supreme Court of Utah.
Dec. 7, 1976.

J. Anthony Eyre, of Kipp and Christian, Salt Lake City, for plaintiff-appellant.

Orrin G. Hatch, of Hatch & Plumb, Salt Lake City, Frank A. Allen, J. MacArthur Wright, St. George, for defendants-respondents.

HENRIOD, Chief Justice:

Appeal from an order granting a motion to compel satisfaction of a default judgment. Reversed with instructions, with no costs on appeal.

In May, 1973, defendants were parties to a construction bond issued in their behalf to assure payment of materialmen claims arising out of a church addition project. In connection therewith, the defendants signed an "Agreement of Indemnity" to hold plaintiff harmless if it paid such claims after failure of defendants to do so. Such agreement contained a provision that any collateral given to secure the coverage, would be in addition to the indemnity agreement provisions.

Such collateral, consisting of a lien right belonging to them against certain condominium property in the area, was assigned to plaintiff and the assignment, although constituting additional security, apparently had no conditions attached to it save that which might be governed by the Utah Uniform Commercial Code,—particularly the provisions of Title 70A–9–501, et seq., Utah Code Annotated 1953. It was assigned, however, when requested by defendants that plaintiff pay off claims that were being pressed against them, in necessitous circumstances but not initially at the instance of the plaintiff. Plaintiff paid the claims at such instance and request.

Under 70A–9–501, in case of the "debtor's" default under a security agreement, as here, the secured party has rights and remedies provided therein, except as limited by subsection (3), which provides that the rules included in the subsection thereinbelow (including 70A–9–504(3), which in turn required notice to the debtor of the secured parties' intention to dispose of the security to satisfy the debt), could not be waived,—"but the parties may by agreement determine the standards by which the

fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable."

The lien rights mentioned above were assigned *prior* to the filing of plaintiff's complaint, and were sold *after* the default judgment, and the proceeds of the sale were applied in satisfaction pro tanto of the judgment.

All of the defendants properly were served with process, but none answered the complaint. The complaint mentioned the surety bond that was issued, and pleaded the Agreement of Indemnity, attaching a photocopy of the latter to the complaint. Upon failure of all and each of the defendants to appear and contest the matter, testimony was taken, and the original Agreement of Indemnity was admitted in evidence as Exhibit P–1, marked "Reduced to Judgment" by M. Howell, Deputy Clerk, as evidenced by the Judgment by Default signed by the trial judge as of October 17, 1974.

On November 11, 1974, the plaintiff put in the Sheriff's hands a Supplemental Order against all of the individuals defendant, and the process in each case was returned unserved because the defendants had left the state.

On December 4, 1974, after such effort to collect on the judgment failed, the plaintiff sold its interest in the lien rights for $6,666, and applied it to the judgment. Defendants simply say they were worth more in their opinion.

In April, 1975, plaintiff caused a Writ of Garnishment to issue, which provoked for the first time any response by defendants who filed a so-called "Motion to Compel Satisfaction of Judgment,"—in this same action,—in which the sole basis for the relief prayed was an alleged agreement entered into between the plaintiff and defendants *after* the judgment which transferred the lien rights to plaintiff *in satisfaction of the judgment* already entered. There is no basis in fact for such claim since the assignment of the lien right

was transferred before the complaint ever was filed,—as the record clearly reflects, it having been recorded on March 8, 1974, whereas the complaint was filed on April 12, 1974. The Uniform Commercial Code was never mentioned in the motion by title, sections, amendment to the motion or otherwise. It came as an afterthought and showed up first in a memorandum of authorities after change of counsel, and in the briefs on appeal.

It is obvious that the defense of payment of a debt or liability even if there had been such a circumstance claimed in this abortive pleading, certainly this was an issue that should have or could have been pleaded in the action,[1] and that failure to have done so is a preventive from asserting it in a motion after judgment, whether you call it a waiver, an estoppel, an abortive move to vacate a judgment, a violation of the rules and substantive case law anent thereto, a collateral attack on, or going behind a judgment or otherwise. The least that could be said about such a tenuous and abortive defensive claim, is that it would be assertable only in an independent action in equity. To hold otherwise under the facts of this case would be pervertive of even loose or ambiguous rules of procedure,—and we are of the conviction that under the circumstances here where the only defense claimed is that of payment in full is vulnerable to the familiar Rule 8(c) of the Utah Rules of Civil Procedure.

The judgment is reversed, except that part recognizing credit of the $6,666 conceded by plaintiff to be a credit against said judgment.

MAUGHAN, J., concurs.

WILKINS, J., concurs in result.

CROCKETT, Justice (concurring in reversal, but suggesting procedure on remand)..

I do not think that justice can be done in the dispute between these parties over the credit to be given on plaintiff's judgment by rigid adherence to the contentions of either the plaintiff or the defendants. The defendants' position is that because the plaintiff bank failed to give notice as required by Section 70A-9-504-(3), U.C.A. 1953, of the Uniform Commercial Code, plaintiff should be deemed to have sold the collateral to satisfy the entire debt; and further that if it had desired to claim a further deficiency, it should have complied with the statute. On the other hand, the plaintiff contends that it sold the collateral (the claims of lien) for a fair and reasonable price of $6,666 and that that amount is all the credit defendants are entitled to.

It is undoubtedly true that the requirement of Section 70A-9-504(3) that the secured creditor (plaintiff) give the debtor (defendants) notice of sale of the collateral is to afford the debtor an opportunity to see that a fair price is paid therefor and that he gets adequate credit on his debt. It strikes me as unrealistic and unfair to rule that, regardless of actual value, the sale of the pledged property without notice should be deemed to pay the entire debt. The circumstances may be such that the pledged property is worth only a small fraction of the judgment and thus the plaintiff would be cheated out of the remainder of his debt.[1] On the other hand, to permit the creditor to sell the pledged property without notice may result in its being sold for much less than its fair value and thus deprive the debtor of credit he is entitled to.

It is my view that the court should not apply an unvarying and rigid rule, but should examine the total situation to determine what is fair and reasonable. Justice requires the rule to be that if the sale of the collateral is not conducted according to

---

1. *F. M. A. v. Build,* 17 Utah 2d 80, 404 P.2d 670 (1965) ; *Hammond v. Calder,* 8 Utah 2d 333, 334 P.2d 562 (1959).

1. This could result in an unconscionable forfeiture which equity should refuse to enforce, cf. *Jacobson v. Swan,* 3 Utah 2d 59, 278 P.2d 294, and authorities cited therein.

the requirements of the statute, that should neither automatically and conclusively bar the plaintiff from claiming payment of the rest of the judgment,[2] nor should the amount received at the sale be regarded as conclusive evidence that the fair market value of the property was received, and thus determinative of the amount which the defendants are entitled to as credit on the judgment.

Justice and equity would best be served, particularly in this situation where there was difficulty in giving defendants notice, by setting a time for a hearing and affording both sides an opportunity to present proof and have the trial court make a determination of their respective contentions: the plaintiffs, that a fair and reasonable price was in fact obtained and credited on the judgment; the defendants, that the claims of lien were in fact worth more than was so obtained and credited.

·In view of the reversal of the trial court's judgment by our decision, it is appropriate to observe that the solution I propose is in accord with the plaintiff's (appellant's) own argument under Point III of its brief, wherein it says that: "in any event, plaintiff has the right to a hearing to prove the fair market value of the collateral." There is precedent for such procedure in the decisions of other courts in similar situations.[3] When that determination is made, the defendants should be given credit for whatever amount is found to be the fair market value of the collateral. I would therefore remand this case with directions to so proceed.

ELLETT, J., concurs in the views expressed in the opinion of Mr. Justice CROCKETT.

---

2. I so state in awareness that under particular circumstances courts have so held. See *Bank of Gering v. Glover*, 192 Neb. 575, 223 N.W.2d 56; *Skeels v. Universal C. I. T. Credit Corp.*, 222 F.Supp. 696; *Atlas Thrift Co. v. Horan*, 27 Cal.App.3d 999, 104 Cal.Rptr. 315 (1972).

3. See *Community Manage. Ass'n. of Colorado Sp. v. Tousley*, 32 Colo.App. 33, 505 P.2d 1314 and cases cited therein; and see *Grant County Tractor Co. v. Nuss*, 6 Wash.App. 866, 496 P.2d 966; *United States v. Whitehouse Plastics*, 5 Cir., 501 F.2d 692.