**NIXDORF COMPUTER, INC., a corporation, Plaintiff-Appellant,**

v.

**JET FORWARDING, INC., a corporation, Defendant-Appellee.**

**No. 76–3721.**

United States Court of Appeals,
Ninth Circuit.

Aug. 11, 1978.

Anthony Liebig (argued), of Lillick, McHose & Charles, Los Angeles, Cal., for plaintiff-appellant.

Harold Thomasian (argued), Torrance, Cal., for defendant-appellee.

Before KENNEDY and HUG, Circuit Judges, and JAMESON *, Senior District Judge.

HUG, Circuit Judge:

This is a contract action arising out of the sale of a computer system. The plaintiff, Nixdorf Computer, Inc., is an Illinois corporation with its principal place of business in Chicago, Illinois. The defendant, Jet Forwarding, Inc., is a California corporation with its principal place of business in Santa Ana, California. Jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332.

Nixdorf as seller, and Jet as buyer, executed a written contract on August 27, 1974 for the sale of a computer system, including both the hardware and the software computer programs necessary to enable the computer to meet the needs of the buyer. On November 19, 1974, the parties executed a supplementary contract for an additional

* Honorable William J. Jameson, Senior United States District Judge, District of Montana, sitting by designation.

piece of equipment, a ledger reader, to be utilized with the computer. The computer system with the supplemental equipment was sold for a combined price of $58,646.00. Jet paid a total of $6,214.86 as a deposit and a balance of $52,431.14 was owed to Nixdorf. The contracts were to be performed in California and both parties have agreed that California law is applicable.

The contract of August 27, 1974 and the supplement of November 19, 1974 were written on identical forms provided by the seller, Nixdorf. The form is entitled "Purchase Agreement" and states on its face that the agreement is subject to the terms and conditions set forth on the reverse of the document. On the reverse of the form are 21 provisions which govern the terms of the purchase.

The computer system was shipped to Jet, which took possession on January 14, 1975. About two weeks later, on January 30, 1975, a Jet employee telephoned Nixdorf to explain that Jet was in financial difficulty and therefore could not and would not perform its duty to pay the balance of the purchase price. He advised Nixdorf to repossess the computer system for Nixdorf's protection.

On February 3, 1975, with Jet's consent, agents of Nixdorf did repossess the equipment. Nixdorf subsequently returned the hardware to its inventory of new equipment, apparently without making any effort to separately identify it. At least some of it was ultimately sold to other customers. At the trial, Nixdorf's sole witness was unable to say whether any of the equipment still remained unsold. After repossessing the equipment, Nixdorf made no effort to notify Jet of the subsequent resale or resales.

Nixdorf then sued Jet for damages. The main contention of Nixdorf is that it is entitled to seller's damages for nonacceptance or repudiation in accordance with § 2708 of the California Commercial Code (U.C.C., § 2-708.)[1] Basically, the measure of damages specified in this section is the difference between the market price at the time of tender and the unpaid contract price or, in the alternative, the loss of profits to the seller, whichever is greater.

Jet, on the other hand, contends that it had accepted the goods and taken possession of them, and that the repossession of the goods by Nixdorf was a realization upon a security interest reserved in the goods under the terms of the contract. Jet further contends that Nixdorf is limited to the remedy of a security interest holder under § 9504 of the California Commercial Code (U.C.C., § 9-504).[2] This section has been

---

1. § 2708. Seller's Damages for Non-acceptance or Repudiation.

 (1) Subject to subdivision (2) and to the provisions of this division with respect to proof of market price (Section 2723), the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental *damages provided in this division* (Section 2710), but less expenses saved in consequence of the buyer's breach.

 (2) If the measure of damages provided in subdivision (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this division (Section 2710), *due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.*

2. The provisions of Cal.Comm.Code, § 9504 here pertinent are:

 § 9504. *Secured Party's Right to Dispose of Collateral After Default; Effect of Disposition.*
 (1) A secured party after default may *sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing.* . . . The proceeds of disposition shall be applied in the order following to
 (a) The reasonable expenses of retaking, holding, preparing for sale, selling and the like and, to the extent provided for in the agreement *and not prohibited by law,* the reasonable attorneys' fees and legal expenses incurred by the secured party;
 (b) The satisfaction of indebtedness secured by the security interest under which the disposition is made; . . .
 (2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency.
 . . . .

construed in California to preclude the security holder from any recovery of a deficiency when the holder fails to notify the debtor in writing of a resale. *Atlas Thrift Co. v. Horan,* 27 Cal.App.3d 999, 104 Cal. Rptr. 315, 59 A.L.R.3d 389 (1972).

The district court accepted Jet's view and entered judgment for the defendant, together with an award of $5,000 in attorney's fees to Jet as the prevailing party.[3] We affirm.

The judgment depends upon the construction of the contract of the parties. The case was tried upon stipulated facts and the testimony of one witness produced by the plaintiff, the branch manager of Nixdorf's Los Angeles office. The witness testified that the written contract on Nixdorf's form constituted the entire agreement between the parties, including both the hardware and the software; that there was no other agreement between the parties; and that there was no contrary oral understanding.

■ We must therefore look to the provisions of the written purchase agreement to determine the rights and duties of the parties. Cal.Civ.Code, §§ 1637, 1638 and 1639. If uncertainty exists, the language of the contract is to be construed most strongly against the party who caused the uncertainty to exist. Cal.Civ.Code, § 1654. Since the purchase agreement was Nixdorf's form agreement, uncertainty or ambiguity must be resolved in favor of Jet and against Nixdorf.

Two of the paragraphs on the reverse of the purchase agreement provided:

(3) A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, . . . a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made.

3. The parties stipulated that the purchase agreement provided that in the event suit became necessary thereunder the losing party was to pay the attorney's fees of the prevailing party.

2. Purchaser hereby grants to the Seller a security interest and title shall remain with seller on the equipment.

. . .

This security interest shall not terminate until all sums due under this Agreement are fully paid. . . .

7. If Purchaser shall fail to make payment when due, Purchaser agrees to return equipment to Seller and Seller may without notice or demand and without legal process enter the premises and take possession of said property, retaining as liquidated damages all payments made thereon. . . .

■ Had Jet repudiated the contract prior to the delivery and acceptance of the computer system, it is clear that Nixdorf could have invoked the seller's remedies provided in Division 2 of the California Commercial Code (§§ 2701–2725) and could properly have sold the computer system and sought damages as provided in § 2708 of the California Commercial Code. However, once the buyer lawfully obtained possession of the goods, then, barring a new agreement, any interest the seller had in the computer system was governed by Division 9 of the California Commercial Code.[4] The purchase agreement provided that Nixdorf retained a security interest in the computer system until the balance of the purchase price was paid. The buyer lawfully obtained possession; and the right to repossess, dispose of the collateral and apply the pro-

4. Section 9113 of the California Commercial Code provides:

§ 9113. Security Interests Arising Under Division on Sales. A security interest arising solely under the division on sales (Division 2) is subject to the provisions of this division except that to the extent that and so long as the debtor does not have or does not lawfully obtain possession of the goods

(a) No security agreement is necessary to make the security interest enforceable; and

(b) No filing is required to perfect the security interest; and

(c) The rights of the secured party on default by the debtor are governed by the division on sales (Division 2).

ceeds was therefore governed by § 9504 of the California Commercial Code.

At the time of the repossession, the parties could, of course, have reached a new agreement concerning the disposition of the computer system and its effect upon the outstanding balance of the purchase price. The evidence reveals no such new agreement, nor any agreement to rescind the contract. Under the terms of paragraph 7 of the purchase agreement, quoted above, Jet, upon failing to make payment when due, was obligated to return the equipment and Nixdorf had the right to enter the premises and take possession of the property. This is exactly what took place.[5] Thus, as Jet contends, Nixdorf, in repossessing the computer system, was acting under paragraph 7 of the agreement and the provisions of Cal.Comm.Code, § 9504 as a secured party.

After repossessing the computer system, the hardware was placed in Nixdorf's inventory of new computer hardware and some of the equipment was sold. Nixdorf gave no notice to Jet of any sale, as required by Cal.Comm.Code, § 9504(3). Jet contends that the failure to give such notice precludes recovery for any deficiency.

 Nixdorf contends that, even assuming it was limited to a security holder's remedies, the trial court erred in ruling that its failure to give notice of sale to the debtor barred a judgment for the deficiency. This issue has appeared frequently, because the Uniform Commercial Code itself left it open. The Cal.Comm.Code, § 9504(2), (U.C.C., § 9–504(2)) says that the debtor is "liable for any deficiency" suffered by the secured party upon resale of the goods. The Cal.Comm.Code, § 9504(3) (U.C.C., § 9–504(3)) requires that the secured party given the debtor notice of the resale. Under the California section, the notice must be in writing. The Code does not explain what consequences a secured party will suffer by failing to give the required notice.

The courts have split on the question of whether the right to a deficiency is forfeited by failure to give notice. See White & Summers, Handbook of the Law Under the U.C.C. (1972), § 26–15, pp. 1000–1007; see cases collected in *Clark Leasing Corp. v. White Sands Forest Prod., Inc.,* 87 N.M. 451, 535 P.2d 1077, 1081 (1975).

 California plainly follows the apparent majority rule, holding that the right to a deficiency is lost when the secured party fails to give proper notice. *Atlas Thrift Co. v. Horan, supra; General Electric Credit Corp. v. Bo-Mar Const. Co.,* 72 Cal.App.3d 887, 140 Cal.Rptr. 417 (1977). Since Nixdorf did not give notice here, the trial court was correct in holding that Nixdorf could not recover any deficiency.

Nixdorf's remaining contentions lack merit. It contends that Jet waived its right to notice under § 9504, and is therefore estopped from asserting that defense. The trial court specifically found that there was no waiver. This finding is supported by the evidence and is not clearly erroneous.

Nixdorf contends that no security agreement was ever intended and that the provisions on the reverse of the contract were mere "boilerplate". We cannot ignore the language of paragraphs 2 and 7, because that language is clear and unambiguous. "Boilerplate" is, notwithstanding its reputation, language. Absent contrary admissible evidence, it will be given effect. If Nixdorf intended no security interest, it should not have used language creating one.

The judgment of the trial court is affirmed.

---

**5.** Under the written terms of paragraph 7, the seller, upon repossessing the property, was entitled to retain all payments made as liquidated damages. Thus it could be argued that seller's actions were an election to repossess and invoke the liquidated damages provision. This argument was not advanced by Jet in the trial;

but, interestingly, if established, it would lead to the same result as that reached by the trial court, with Nixdorf retaining the computer system and the down payment of $6,214.86 and Jet being absolved of further damages under the contract.