421 So.2d 175 (1982)
DEPENDABLE INSURANCE COMPANY, INC., Appellant,
v.
Alison B. LANDERS, Appellee.
No. 81-1362.
District Court of Appeal of Florida, Fifth District.
September 29, 1982.
Rehearing Denied November 5, 1982.
Joseph Egan, Jr., of Pilacek, Egan, Cohen & Williams, Orlando, for appellant.
Roger A. Kelly, of Fishback, Davis, Dominick & Bennett, Orlando, for appellee.
*176 SHARP, Judge.
Dependable Insurance Company, Inc. appeals from a Final Summary Judgment denying it a deficiency judgment against Ms. Landers because of failure to send her notice of the time after which a private sale of her automobile would take place.[1] The court also granted Landers' counterclaim against Dependable, which was based on failure to comply with sending notice.[2] The damage award of one thousand five hundred ninety-six dollars eighty cents ($1,596.80) was based on the service charge or time price differential plus ten percent. We reverse the damage award because it has been asserted against the wrong party; and we remand for trial the question of whether or not Landers waived her right to receive notice of sale, because the record presents conflicting facts and inference on this issue.
The facts and circumstances in this case are sufficiently unusual as to remove it from the easy application of rules evolved in this area of substantive law. In August of 1978, Landers purchased a new 1978 MG roadster from Collier Auto Sales, Inc. She financed part of the purchase price, and executed a Retail Installment Contract for five thousand nine hundred ninety-one dollars thirty-six cents ($5,991.36). Shortly thereafter, the installment sales contract was assigned to Sun First National Bank.
In October of 1978, Landers had an accident with the MG and it was severely damaged. Landers had the car taken to Ware & Sons Body Shop, where it remained for six months. At some point during that time period Landers learned the MG had been "totalled." She also learned that Allstate Insurance Company cancelled her insurance on the car the day before her accident. She brought suit against Allstate and recovered a settlement of three thousand dollars ($3,000).
Landers told the Bank about the accident, her lack of insurance, but not about her settlement with Allstate. The Bank first tried to get vendor's single interest coverage on the car. But since the accident had taken place before the Bank applied for coverage, the Bank relied on a blanket insurance policy it had with Dependable.
Landers continued to pay the Bank on her contract through February of 1979. Then her attorney wrote the Bank a letter dated April 17, 1979. It said:
Please be advised that Ms. Landers will not make any further payments on the above account, and you may consider it in default. The collateral is located at Ware & Sons, 2591 West Washington Street, Orlando, Florida. You may take whatever action you deem necessary to protect the interest of Sun First National Bank of Orlando. We will appreciate being advised of the deficiency balance which will be assigned to the single interest insurance carrier along with an itemization of the computation of the balance.
I have previously advised you that Ms. Landers' automobile insurance with Allstate Insurance Company was cancelled without notice to her effective October 2, 1978, the day prior to the accident in which her automobile sustained damage rendering it a total loss... .
For the reasons set forth hereinabove, Ms. Landers reasonably disputes her debt to Sun First National Bank of Orlando... .
*177 Upon receipt of this letter, the Bank set the Landers file up as a repossession matter. It mailed a certified letter to Landers on April 24, 1979, notifying her the car would be sold within ten days at a private sale. However, the letter was incorrectly addressed and it was returned to the Bank undelivered. Another letter identical to the April 24, 1979 letter was prepared with a correct address for Landers, but the Bank had nothing in its file to show this letter was mailed. On May 23, 1980, a third letter with the same content as the other letters was mailed to Landers' correct address, according to the Bank's records. Landers denied she ever received any of the letters. She had moved three times since purchasing the car.
In any event, the third letter was too late because on May 18, 1979, the Bank sold the car to Ware & Sons for salvage for two hundred twenty-five dollars ($225). The Bank was pleased to get that much because by that time, the storage bill at Ware & Sons exceeded six hundred fifty dollars ($650).
After the sale, on June 11, 1979, the bank assigned the Retail Installment Contract to Dependable, and sent Dependable its file on the transaction. The Security Agreement relating to the MG provided in caps and bold print:
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF.
Dependable paid the Bank three thousand six hundred thirty-four dollars fifteen cents ($3,634.15) for the MG under its blanket insurance policy. At the time Landers defaulted she owed a balance of four thousand one hundred sixty-three dollars four cents ($4,163.04) on the contract.

I

Dependable's Right to a Deficiency Judgment Against Landers
Every district court of appeal in Florida except this one has adopted the interpretation of section 679.504(3), Florida Statutes (1981), that a secured creditor who repossesses collateral, but fails to give reasonable notice of the sale to the debtor before selling the collateral, loses its right to sue the debtor for a deficiency.[3] There are jurisdictions which take different views,[4] but it appears that our sister courts have sided with the weight of authority.[5]
The rationale for denying the creditor a deficiency is partly historical. No right to a deficiency existed at common law or law merchant for a creditor who repossessed collateral and, when the right to a deficiency was created by pre-code statutes, strict compliance with the steps (including giving notice) set out in the statutes was required. The common law or law merchant continues under the Code unless expressly changed.[6]
*178 A stronger argument for the rule is the courts' perception that the debtor's right to redeem[7] the collateral or protect himself from an unfair and perhaps secret sale depends, as a practical matter, on his receiving reasonable advance notice of the sale. To protect the debtor's right of redemption, courts have read the notice requirement strictly.[8] The remedy provided by section 9-507(1) of the U.C.C. which gives a debtor the right to sue the creditor for damages has been described as no substitute for the right of redemption, and in any event, it has been rejected as being the exclusive remedy for a debtor whose creditor has departed from the requirements of Part 5, Article 9 of the Code.[9] Further, there is an unarticulated feeling that a debtor whose collateral has been repossessed and is being sold lacks resources to protect himself, and it is not too great a burden to require the stronger party to strictly comply with the statute.[10] Accordingly, we adopt the majority view of section 679.504(3), Florida Statutes (1981).
However, under the circumstances as disclosed by the record in this case, we think there was a material question of fact whether or not Landers waived her right to notice of the sale, making summary judgment improper. The waiver issue is posed primarily by Landers' attorney's letter to the Bank and her de facto abandonment of the collateral at that point.[11] Both Landers and the Bank knew the MG was worth only salvage, and Landers' attorney possibly inferred he did not want to know about the sale by asking only to be told what the "deficiency" would be.
The resolution of the meaning of the letter in this context is a question for the trier of fact.[12] Facts similar to those in this case have been held sufficient to constitute a waiver of the notice of sale requirement. See Nelson v. Monarch Investment Plan, Inc., 452 S.W.2d 375 (Ky. 1970); Grant County Tractor Co. v. Nuss, 6 Wash. App. 866, 496 P.2d 966 (Ct.App. 1972). In other similar cases, courts have found no waiver.[13]
We are aware of Florida's unique or special provision in section 9-504(3) of the U.C.C. that notice of sale must be sent if the debtor "has not signed after default a conspicuous statement renouncing or modifying his right to notification of sale."[14] *179 (Emphasis supplied). Landers' attorney's letter came after default, and since it was prepared by the debtor, not the creditor, the waiver, if intended, need not have been more conspicuous than the other points or paragraphs in the letter.

II

Landers' Right to Damages Pursuant to Section 679.507(1), Florida Statutes (1981) Against Dependable
Assuming that Landers did not waive her right to notice of sale, she would have the right to recover

from the secured party any loss caused by a failure to comply with the provisions of this part. If the collateral is consumer goods the debtor has a right to recover in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the debt or the time price differential plus 10 percent of the cash price. (Emphasis supplied).
§ 679.507(1), Fla. Stat. (1981). It is clear from this record that Dependable became the assignee of the installment sales contract long after the sale of the MG. The provisions of section 679.507(1) impose the liability or penalty for violating Part 5 of Article 9, on the secured party who has failed to proceed in accordance with the Code requirements  not a subsequent assignee who had nothing to do with the defalcations. Allard v. Ford Motor Credit Co., 139 Vt. 162, 422 A.2d 940 (1980).
Appellee argues that pursuant to section 679.318(1)(a), Florida Statutes (1981), Dependable took assignment of the promissory note subject to "[a]ll the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom ...," and therefore, it is liable to the same extent Sun Bank, its assignor, would be. However, this section is a codification of the common law rule regarding assignments, putting the assignee in the shoes of the assignor insofar as the asserted claims may defeat or reduce the assignee's claim against the debtor. See Wear v. Farmers & Merchants Bank, 605 P.2d 27 (Alaska 1980); Hudson Supply & Equipment Co. v. Home Factors Corp., 210 A.2d 837 (D.C. 1965); Nusbaum v. Riskin, 136 So.2d 1 (Fla. 2d DCA 1961); James Talcott, Inc. v. H. Corenzwit & Co., 76 N.J. 305, 387 A.2d 350 (1978).
Generally, unless the assignee assumes the assignor's duties or liabilities, it is not liable to the debtor affirmatively, that is, beyond the point of defeating its claim. Farmers Acceptance Corp. v. DeLozier, 178 Colo. 291, 496 P.2d 1016 (1972); Conti Causeway Ford v. Jarossy, 114 N.J. Super. 382, 276 A.2d 402 (Ocean County Ct. 1971), aff'd, 118 N.J. Super. 521, 288 A.2d 872 (1972). Failure to give notice in this case would be a "shield" and not a "sword" as regards Dependable. If available as a defense, it could extinguish or reduce the deficiency against Dependable, but Sun Bank's violation of section 679.504, Florida Statutes (1981) would not be available to make Dependable liable to Landers.
We do not think the record shows Dependable participated in the financing arrangement with Sun Bank so closely as to have constituted an implied assumption of its assignor's duties and liabilities. Compare Massey-Ferguson Credit Corp. v. Brown, 173 Mont. 253, 567 P.2d 440 (1977). Nor do we think the language in the Installment Sales Contract that "any holder of this consumer credit contract is subject to all claims and defenses which the seller of goods or services obtained pursuant hereto or with the proceeds hereof" is applicable. The seller in this case was Collier Auto Sales, Inc., and no liability of Collier was involved in this suit. This case is distinguishable from Boden v. Atlantic Federal *180 Savings & Loan Association, 396 So.2d 827 (Fla. 4th DCA 1981).
REVERSED AND REMANDED.
ORFINGER, C.J., and COWART, J., concur.
NOTES
[1] Section 679.504(3), Florida Statutes (1981), provides that after default, a secured party may repossess and sell collateral, but it is required to send notice to the debtor, prior to the sale. This subsection also says,

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time ... after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor... .
[2] Section 679.507(1), Florida Statutes (1981), provides that if a secured party does not comply with part 5 of Article 9 in disposing of collateral, the debtor may recover "any loss" or if the collateral is "consumer goods," the debtor may

recover in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the debt or the time price differential plus 10 percent of the cash price.
[3] See Barnett Bank of Tallahassee v. Campbell, 402 So.2d 12 (Fla. 1st DCA 1981); Barnett v. Barnett Bank of Jacksonville, 345 So.2d 804 (Fla. 1st DCA 1977); Washington v. First Nat'l Bank of Miami, 332 So.2d 644 (Fla. 3d DCA 1976); Hepworth v. Orlando Bank & Trust Co., 323 So.2d 41 (Fla. 4th DCA 1975); Turk v. St. Petersburg Bank & Trust Co., 281 So.2d 534 (Fla. 2d DCA 1973).
[4] See Norton v. Nat'l Bank of Commerce of Pine Bluff, 240 Ark. 143, 398 S.W.2d 538 (1966); Conti Causeway Ford v. Jarossy, 114 N.J. Super. 382, 276 A.2d 402 (Ocean County Ct. 1971), aff'd, 118 N.J. Super. 521, 288 A.2d 872 (1972); Beneficial Fin. Co. v. Young, 612 P.2d 1357 (Okl. 1980); Grant County Tractor Co. v. Nuss, 6 Wash. App. 866, 496 P.2d 966 (1972).
[5] See Skeels v. Universal CIT Credit Corp., 222 F. Supp. 696 (W.D.Pa. 1963), vacated on other grounds, 335 F.2d 846 (3d Cir.1964); Atlas Thrift Co. v. Horan, 27 Cal. App.3d 999, 104 Cal. Rptr. 315 (Ct.App. 1972); Braswell v. American Nat'l Bank, 117 Ga. App. 699, 161 S.E.2d 420 (Ct.App. 1968); Morris Plan Co. of Bettendorf v. Johnson, 133 Ill. App.3d 717, 271 N.E.2d 404 (App.Ct. 1971); Camden Nat'l Bank v. St. Clair, 309 A.2d 329 (Me. 1973); Aimonetto v. Keepes, 501 P.2d 1017 (Wyo. 1972).
[6] Atlas Thrift Co. v. Horan, 27 Cal. App.3d 999, 104 Cal. Rptr. 315 (Ct.App. 1972); Turk v. St. Petersburg Bank & Trust Co., 281 So.2d 534 (Fla. 2d DCA 1973); Camden Nat'l Bank v. St. Clair, 309 A.2d 329 (Me. 1973).
[7] U.C.C. § 9-506.
[8] Skeels v. Universal CIT Credit Corp., 222 F. Supp. 696 (W.D.Pa. 1963), vacated on other grounds, 335 F.2d 846 (3rd Cir.1964); Braswell v. American Nat'l Bank, 117 Ga. App. 699, 161 S.E.2d 420 (Ct.App. 1968); Morris Plan Co. of Bettendorf v. Johnson, 133 Ill. App.3d 717, 271 N.E.2d 404 (Ct.App. 1971).
[9] Camden Nat'l Bank v. St. Clair, 309 A.2d 329 (Me. 1973); Atlas Thrift Co. v. Horan, 27 Cal. App.3d 999, 104 Cal. Rptr. 315 (Ct.App. 1972); U.C.C. § 1-103.
[10] Camden Nat'l Bank v. St. Clair, 309 A.2d 329 (Me. 1973).
[11] Appellee argues that waiver of notice was not specifically pled in reply to its Answer or Counterclaim. However, the Summary Judgment in this case was entered before all the motions directed at the sufficiency of the Counterclaim and Answer had been ruled upon. Further, on reviewing a summary judgment, the appellate court may and should look beyond the pleadings. Beckerman v. Greenbaum, 347 So.2d 141 (Fla. 2d DCA 1977); Forte v. Tripp & Skrip, 339 So.2d 698 (Fla. 3d DCA 1976).
[12] Florida Shade Tobacco Growers, Inc. v. Jno. H. Swisher & Son, Inc., 369 So.2d 657 (Fla. 1st DCA 1979); Six L's Packing Co. v. Florida Farm Bureau Mut. Ins. Co., 268 So.2d 560 (4th DCA 1972), cert. dismissed, 276 So.2d 37 (Fla. 1973).
[13] See Federal Deposit Ins. Corp. v. Farrar, 231 N.W.2d 602 (Iowa 1975); Aimonetto v. Keepes, 501 P.2d 1017 (Wyo. 1972). But see Bondurant v. Beard Equip. Co., 345 So.2d 806 (Fla. 1st DCA 1977) (similar facts to this case, but court held debtor's actual knowledge the surrendered collateral would be sold constituted notice under section 679.504(3), Florida Statutes).
[14] § 679.504(3), Fla. Stat. (1981). The definition of "conspicuous" in section 1-201(10) of the U.C.C. seems inapplicable here since it obviously contemplates a paper drafted by the creditor and sent to the debtor for signature.

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous." Whether a term or clause is "conspicuous" or not is for decision by the court.
§ 671.201(10), Fla. Stat. (1981).