[Civ. No. 49716. Second Dist., Div. Three. Aug. 24, 1977.]

GENERAL ELECTRIC CREDIT CORPORATION,
Plaintiff and Respondent, v.
BO-MAR CONSTRUCTION CO. et al., Defendants and Appellants.

COUNSEL

Caras & Evangelatos and Gary B. McGaha for Defendants and Appellants.

Plotkin & Saltzburg, Martin F. Goldman and Russell Rapaport for Plaintiff and Respondent.

OPINION

ALLPORT, Acting P. J.—Defendants Bo-Mar Construction Co. (Bo-Mar), Raymond E. Bluff and Robert H. Johnson appeal from a summary judgment in favor of plaintiff General Electric Credit Corporation (General Electric) on its complaint to recover possession of personal property and damages.

The complaint alleges that on September 1, 1972, Crook Company sold a backhoe to Bo-Mar pursuant to a conditional sales agreement whereby the unpaid balance was to be paid in monthly installments commencing October 5, 1972. Bo-Mar admits the execution of this agreement. It is further alleged that in connection with the transaction Crook Company retained a security interest in the collateral to guarantee the balance of the purchase price and did execute and file with the California Secretary of State a financing statement. Bo-Mar admits execution of this statement. It is further alleged that Crook Company assigned its interest in the collateral to General Electric which has performed all of the terms and conditions required of it under the agreement and that on February 6, 1975, Bo-Mar breached the agreement by failing to make payments. General Electric then caused the entire balance to be accelerated accompanied by the filing of this action. Except as noted above the answer puts all allegations of the complaint in issue.

The motion for summary judgment was made upon the ground that there is no defense to the action or triable issue of fact and is based upon the records and files, as well as declarations of T. J. Hallacy, Martin F. Goldman and Chuck Green, and was opposed by declarations of Robert H. Johnson, Edward F. Wroe, Raymond E. Bluff and Gary B. McGaha, together with reference to a portion of the deposition of Thomas Hallacy. The motion was granted upon the ground that "no triable issue of fact as to the propriety of the public auction sale in accordance with contractual or legal requirements" was presented and judgment rendered accordingly. Following a reduction in the amount of the judgment, defendants' motion for a new trial was denied.

### Contentions

It is contended that summary judgment was improper because triable issues of fact were raised as to whether the collateral was disposed of at public sale in a commercially reasonable manner and whether defendants were entitled to a set-off or rebate for unearned finance charges assessed in the sales agreement upon default and acceleration. In arguing these contentions defendants concede that the transaction is governed by division 9 of the California Uniform Commercial Code and no argument is presented to the contrary.

### Discussion

Insofar as applicable to the facts before us the California Uniform Commercial Code in section 9504, subdivision (3) permits a secured creditor, following repossession, to purchase the collateral at a "public" sale provided he acts in a good faith and commercially reasonable manner. This section provides that "[a]ny sale of which notice is delivered or mailed and published as herein provided and which is held as herein provided is a public sale."[1] The validity of the sale depends on

---

[1] With respect to giving notice the section provides: "Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale, and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice giving his address (before that secured party sends his notification to the debtor or before debtor's renunciation of his rights), a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor at his address as set forth in the financing statement or as set forth in the security agreement or at such other address as may have been furnished to the secured party in writing for this purpose, or, if no address has been so set forth or furnished, at his last known address.

compliance with the statutory requirements concerning dispositions and notice. (*Atlas Thrift Co.* v. *Horan,* 27 Cal.App.3d 999, 1009 [104 Cal.Rptr. 315, 59 A.L.R.3d 389].) California case law antedating the code was to the same effect. "The finding of the court that the sale was not a public one, we think, has ample support in the testimony, lacking as it did any reasonable or customary notice of its time and place. A public sale of pledged property must be made by public auction in the manner and upon the notice to the public, usual at the place of sale in respect to auction sales of similar property and must be for the highest obtainable price. (Civ. Code, sec. 3005.) By section 3010, when so sold, the pledgee, or pledgeholder, may purchase at such sale. By section 3002 the pledgee must give actual notice to the pledgor of the time and place at which the property pledged is to be sold." (*Lowe* v. *Ozmun,* 3 Cal.App. 387, 393 [86 P. 729].)

■ Reason dictates that sale of repossessed collateral, to be of protection to a debtor, must ordinarily be done in public, during business hours, upon adequate notice within a reasonable time of repossession and under conditions reasonably calculated to bring the fair market price if the code requirements are to be met. A secured party's failure to allege and prove compliance with the code restrictions against buying at a private sale denies him the right to a deficiency judgment. (*Barber* v. *LeRoy,* 40 Cal.App.3d 336, 343 [115 Cal.Rptr. 272].)

■ The principles governing the propriety of summary judgment are succinctly stated in *Johnson* v. *Canadian Transport Co.,* 54 Cal.App.3d 827, at page 833 [127 Cal.Rptr. 72], as follows: " 'A study of the cases reveals too great optimism on the part of moving parties. The appellate courts have not, on the whole, been favorably inclined to the use of this "drastic" remedy which deprives a party whose pleading is sufficient of the right to a trial on the issues raised thereby. The remedy is designed to

---

and to any other secured party at the address set forth in his request for notice, at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held. Any public sale shall be held in the county or place specified in the security agreement, or if no county or place is specified in the security agreement, in the county in which the collateral or any part thereof is located or in the county in which the debtor has his residence or chief place of business, or in the county in which the secured party has his residence or a place of business if the debtor does not have a residence or chief place of business within this state. If the collateral is located outside of this state or has been removed from this state, a public sale may be held in the locality in which the collateral is located. Any public sale may be postponed from time to time by public announcement at the time and place last scheduled for the sale."

terminate an action promptly where the purported cause of action or defense is sham or otherwise wholly unfounded. But it is futile to seek the order where any basis for a cause of action or defense can be shown. In other words, the moving party should not confuse an opponent's *weak* case with *no case at all*. The court, construing the moving party's affidavits strictly (*supra*, § 181) and the counteraffidavits liberally (*supra*, § 191), will reverse the summary judgment if any kind of case is shown.' (4 Witkin, Cal. Procedure (2d ed. 1971) § 199, p. 2844.)"

So construing the declarations in the instant case, we must conclude that the trial court erred in holding that there was no triable issue of fact as to the propriety of the public auction sale.

First as to the public nature of the sale, one of the declarations of T. J. Hallacy expresses his conclusion that "a public foreclosure sale was held in the City and County of San Diego, . . . and although properly advertised and noticed, there were no bids forthcoming." A portion of Hallacy's deposition reads:

"Q. Did you put your telephone number in the ads?

"A. Yes, I did.

"Q. Where does that show?

"A. Wait a minute. No, I did not. I didn't put my name or telephone in either ad. We identified it as being a Chuck Green and Associates in Lakeside, California.

"Q. Did you believe you would get as much exposure without the telephone number?

"A. I believed that I'd get more by advertising it under Chuck Green's name.

"Q. But by not putting the telephone number in there do you think you discouraged any inquiries?

"A. It's possible.

"Q. Is there any reason why you didn't put Mr. Green's or your telephone number?

"A. I can think of none.

"Q. To your knowledge did anybody view the machines while they were sitting there?

"A. I talked to Chuck Green and he told me that he had no one show up when the machine was stored there for the purpose of looking at it.

"Q. Then what happened on the day of the auction?

"A. No one showed up.

"Q. You appeared?

"A. I was there, Jack Gallagher, my direct supervisor, was there and Chuck Green was there."

Hallacy's conclusion as to the sale being properly noticed is suspect as to both location and lack of a telephone number. According to a response signed and filed by Martin F. Goldman, an attorney for General Electric, the sale was not made until more than one hour had elapsed from the designated sale time when Mr. Hallacy had returned to his office, conferred with his supervisors and then bid $15,000. The type of business conducted by Green and the public nature of the actual place where the sale was supposed to have been held is very much in doubt. That it was in fact held and concluded as a public sale needs elaboration.

The allegations of the complaint and other declarations disclose the backhoe was repossessed on April 11, 1975, and not sold until November 21, 1975, although the value of these machines started dropping substantially in September of 1975. When ultimately sold the price obtained was substantially less than the amount owed by the purchaser as well as the value placed thereon by all parties. An obviously low price should serve to alert the court to the possibility of commercially unreasonable practices. (Cf. *Credit Bureau Metro, Inc.* v. *Mims,* 45 Cal.App.3d Supp. 12, 15 [119 Cal.Rptr. 622].)

It is our conclusion that the matters discussed herein raised triable issues of fact as to both the public nature of the sale and the commercial reasonableness of the disposition. For that reason the trial court erred in granting the summary judgment.

We need not discuss the issue of set-off as that will no doubt receive full and sound trial court consideration in view of our decision requiring trial on the merits.

The judgment is reversed.

Cobey, J., and Potter, J., concurred.