[Civ. No. 3313. Fifth Dist. Dec. 6, 1978.]

CLARK EQUIPMENT COMPANY, Plaintiff,
Cross-defendant and Appellant, v.
MASTELOTTO, INC., Defendant, Cross-complainant and Appellant.

**COUNSEL**

DiGiorgio, Davis & Klein, V. P. DiGiorgio and N. Thomas McCartney for Plaintiff, Cross-defendant and Appellant.

Rex R. Mull for Defendant, Cross-complainant and Appellant.

**OPINION**

**MEYERS, J.***—Judgment was entered on a jury verdict in favor of Clark Equipment Company for $68,625.94. On Mastelotto, Inc.'s cross-complaint judgment was for Clark Equipment Company as cross-defendant. Mastelotto, Inc., hereafter called defendant, appeals from the judgment. Clark Equipment Company, hereafter called plaintiff, appeals from the judgment only insofar as it fails to include prejudgment interest

---

*Assigned by the Chairperson of the Judicial Council.

and attorney fees and appeals from an order denying its motion for interest and attorney fees.

## FACTS

■ Defendant entered into a lease-option agreement with the plaintiff for the acquisition of a used Michigan Tractor Shovel. The total price was $147,771.29 payable in 41 monthly installments of $3,518.36. Clark Leasing Company, a subsidiary of plaintiff, financed the transaction and received a written assignment of the lease-option. The assignment was with recourse against plaintiff and also provided that plaintiff would assist in collecting payments and in enforcing the right to possession in the event of a default by the defendant.

After using the equipment for several months, defendant delivered it to the plaintiff for repairs. The parties were then involved in a minor dispute over the amount due plaintiff on an open account. This problem was resolved when plaintiff issued a credit that reduced the account from approximately $5,000 to $3,138.64. Defendant then acknowledged the debt and also admitted that it had failed to make three payments totaling $10,555.08 due under the lease.

Plaintiff notified defendant that the equipment would not be released until these two overdue items and the additional sum of $8,404.21 were paid. The latter sum represented a bill for repairs to the equipment performed before the lease to defendant. The equipment had been damaged while under lease to one Vickrey. Claims had been submitted to the insurance company covering Vickrey and to the company that insured defendant. Both companies refused payment and neither Vickrey nor defendant would accept responsibility for the charges. For our purposes, liability for this debt is immaterial. Clearly plaintiff had no right under the lease with defendant to withhold possession of the equipment for repairs completed before the lease was executed. Plaintiff makes no claim to the contrary.

In response to plaintiff's excessive demand, defendant wrote that it would make no payments until the wrongful request was withdrawn. Defendant also called on its insurance company to get the old bill settled. No payments were made or tendered. After several months of waiting, plaintiff sent the defendant notice of sale of the equipment at public auction. The notice described the equipment and stated the date, time, place and conditions of the sale. The notice was published in three newspapers and posted in public places.

Defendant did not attend the auction and plaintiff was the only bidder. The purchase price was $49,500. Approximately three months later plaintiff sold the equipment with the addition of logging forks for $60,000. The logging forks cost $10,066. It is unclear whether plaintiff retained a ʳaluable bucket that was removed from the equipment.

### DEFENDANT'S APPEAL

We will discuss in order the defendant's contentions that (1) plaintiff has no standing to sue; (2) the plaintiff converted the equipment when demand was made for the old repair bill; (3) the plaintiff failed to adequately plead or prove a right to a deficiency judgment under the Commercial Code.

Plaintiff did have standing to sue. Defendant's argument is that the lease-option was assigned to Clark Leasing Company and had not been effectively reassigned to the plaintiff. There was no written reassignment and defendant takes the position that there was no oral reassignment and, even if the court finds otherwise, an oral reassignment does not satisfy Civil Code section 1698.[1] By its terms, the assignment to Clark Leasing Company contemplates a reassignment on default. Therefore such reassignment when made to plaintiff was not an alteration of the original agreement and a writing was not required. (See *Busch* v. *Globe Industries* (1962) 200 Cal.App.2d 315 [19 Cal.Rptr. 441].)

Whether there was in fact an assignment to the plaintiff was submitted to the jury with adequate instructions requested by the defendant. Substantial evidence supports the verdict and, under familiar rules, we are bound to accept the jury's decision.

 Despite the jury's contrary finding, defendant urges us to hold that there was a conversion of its equipment as a matter of law when plaintiff indicated that possession would be withheld until the old repair

---

[1]Civil Code section 1698 provides:

"(a) A contract in writing may be modified by a contract in writing.

"(b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties.

"(c) Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. The statute of frauds (Section 1624) is required to be satisfied if the contract as modified is within its provisions.

"(d) Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel, oral novation and substitution of a new agreement, rescission of a written contract by an oral agreement, waiver of a provision of a written contract, or oral independent collateral contracts."

bill was paid. This argument ignores the inescapable fact that plaintiff had and retained lawful possession of the equipment.

By the terms of the lease and the provisions of California Uniform Commercial Code section 9503,[2] plaintiff as the secured party had the right to take possession of the collateral in the event of default. Defendant was delinquent in the sum of $10,555.08 in lease payments. There can be no doubt that this constituted a default of defendant's obligations under the lease. It follows that plaintiff could rightfully take possession and pursue its remedies in compliance with the Commercial Code.

Defendant was not without a means to protect itself against losing its property and facing a deficiency judgment. California Uniform Commercial Code section 9506[3] gave it a right to redeem the equipment at any time before it was disposed of. To do this, defendant had to tender fulfillment of all obligations secured by the equipment. Until such a tender was made, plaintiff's possession was lawful. There was no such tender. Even if defendant now claimed that tender was in fact made or waived we could not consider such claim because it was not made in the trial court. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 281, pp. 4269-4270; see also *In re Marriage of Karlin* (1972) 24 Cal.App.3d 25, 33 [101 Cal.Rptr. 240], disapproved on other grounds in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561].)

There was no conversion by the plaintiff. Its lawful possession did not become unlawful by the making of an excessive demand at a time when there was no obligation to return the equipment to defendant.

The parties agree that the lease-option was a secured transaction and that plaintiff's right to a deficiency judgment hinges on its compliance with California Uniform Commercial Code section 9504, subdivision (3),

[2]California Uniform Commercial Code section 9503 provides in part: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral."

[3]California Uniform Commercial Code section 9506 reads: "At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 9504 or before the obligation has been discharged under Section 9505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses."

where the pertinent language is: "A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner." This section also requires written notice of the time and place of a public sale be given the debtor and published in a newspaper of general circulation. ▉ "[A] secured party who conducts a sale of the collateral must allege and prove compliance with the requirements of Commercial Code section 9504, subdivision (3); . . ." (*Barber* v. *LeRoy* (1974) 40 Cal.App.3d 336, 343 [115 Cal.Rptr. 272].) Plaintiff's complaint has no such allegations and the omission would be fatal to its position if the defect had not been cured by events during the trial.

▉ After plaintiff rested, there was a motion for nonsuit. Plaintiff moved to amend the complaint to conform to the proof on the issue of its compliance with section 9504, subdivision (3), in the sale of the equipment. The motion was granted. No written amendment was filed or served, but the trial proceeded as if the right to a deficiency was in issue. Defendant called an expert witness in an effort to show that the sale was not made in a commercially reasonable manner. The sufficiency of the notice to the debtor was questioned. Defendant requested an instruction on this subject and it was given.

In *McAllister* v. *Union Indemnity Co.* (1935) 2 Cal.2d 457 [32 P.2d 650, 42 P.2d 305] there was a motion for nonsuit. Plaintiff responded with a suggestion that the complaint be amended. There was no motion and no ruling allowing an amendment. However, the trial proceeded as if the defectively pleaded cause of action was fully at issue. The court there held that appellant's right to stand upon the failure to amend the complaint was waived. The court stated another rule applicable to our case: "It is also true that the parties may voluntarily submit and try an issue without any specific pleadings and thus be estopped from complaining thereat after judgment." (*McAllister* v. *Union Indemnity Co., supra,* 2 Cal.2d at p. 460.)

The failure to file an amendment as allowed by the court is, in this case, an insignificant technicality. Defendant points to no prejudice and we find none.

Defendant is also met with the doctrine of "theory of trial." It is stated in 6 Witkin, California Procedure (2d ed. 1971) Appeal, section 281, page 4269, as follows: "Where the parties try the case on the assumption that a

cause of action is stated, that certain issues are raised by the pleadings, that a particular issue is controlling, or that other steps affecting the course of the trial are correct, neither party can change this theory for purposes of review on appeal."

We conclude that the defective pleading does not compel a reversal and we examine the contention that plaintiff failed to prove that the sale met the standards found in section 9504, subdivision (3).

Defendant attacks the sufficiency of the notice of the auction sale because it erroneously referred to Clark Leasing Company as the lessor of the equipment. This mistake did not mislead the defendant or anyone else and could not have affected the sale in any way. The contention that the notice was nullified by this error is frivolous.

Defendant does have some basis for questioning the validity of the sale as commercially reasonable. There was evidence that publication of the notice of sale in trade journals might have attracted additional buyers to bid on the equipment. There was also expert testimony that the sales price of $49,500 was low and that the equipment was worth $75,000.

Whether a sale is conducted in a commercially reasonable manner is a question of fact and the answer depends on all of the circumstances existing at the time of the sale. Neither the most advantageous method of sale nor the highest possible price is demanded. This is made clear by the California Uniform Commercial Code which provides in section 9507, subdivision (2): "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner."

Some factors to consider in determining whether the sale was made in a commercially reasonable manner are suggested by the court in *General Electric Credit Corp.* v. *Bo-Mar Constr. Co.* (1977) 72 Cal.App.3d 887 [140 Cal.Rptr. 417]: "Reason dictates that sale of repossessed collateral, to be of protection to a debtor, must ordinarily be done in public, during business hours, upon adequate notice within a reasonable time of

repossession and under conditions reasonably calculated to bring the fair market price if the code requirements are to be met." (*Id.,* at p. 891.) ▆ Here the sale of the equipment was made in a public place, during business hours, and upon adequate notice. Under all of the facts, the jury could find that the delay after repossession was reasonable and for defendant's benefit and that the price obtained was adequate. Expert testimony confirmed that the sale was conducted in a manner common to the industry. There was evidence that the market on the type of equipment involved was depressed due to a reduction in available construction jobs where such equipment could be utilized. Plaintiff purchased the equipment for resale and it was proper to bid a wholesale price. There was a conflict in the evidence as to the amount of plaintiff's profit on resale. Even if the defendant's position on the profit is found to be established by the evidence, it would not compel us to conclude that the jury's verdict is not supported by substantial evidence. See *Sierra Financial Corp.* v. *Brooks-Farrer Co.* (1971) 15 Cal.App.3d 698 [93 Cal.Rptr. 422] where the total circumstances justified a finding that a sale was commercially reasonable where the price paid at the sale was only a fraction of the true value of the collateral.

We conclude that there is substantial evidence that plaintiff had lawful possession of the equipment after default by defendant; that plaintiff's sale of the equipment was in compliance with the Commercial Code; and that plaintiff was entitled to a deficiency judgment. The verdict is therefore safe from attack on this appeal.

### PLAINTIFF'S APPEAL

Plaintiff moved the trial court to vacate the judgment entered on the verdict and to enter a different judgment adding specified sums for prejudgment interest and attorney fees. The motion was denied except for prejudgment interest on the amount of the open account. Plaintiff appeals from the judgment only insofar as it fails to include interest and attorney fees and appeals from the order denying its motion to correct the judgment.

*Prejudgment Interest.*

▆ Where the right to recover liquidated damages is vested on a specific date, there is a right to interest at the legal rate from that date as a matter of law. The source of that right is Civil Code section 3287, subdivision (a), which provides in part as follows: "Every person who is

entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

It is error for the trial court to refuse to add prejudgment interest to the amount of the verdict if the established facts bring the case within Civil Code section 3287, subdivision (a). It was so held in *Esgro Central, Inc.* v. *General Ins. Co.* (1971) 20 Cal.App.3d 1054 [98 Cal.Rptr. 153]. (See also *Happoldt* v. *Guardian Life Ins. Co.* (1949) 90 Cal.App.2d 386 [203 P.2d 55] and *Engelberg* v. *Sebastiani* (1929) 207 Cal. 727 [279 P. 795].)

Damages are certain under section 3287, subdivision (a), where the dispute between the parties does not concern the amount due, but relates to the issue of liability only. (See *Esgro Central, Inc.* v. *General Ins. Co., supra,* 20 Cal.App.3d at p. 1060.) In our case the amount of the deficiency was fixed when the sale was made. Plaintiff would have a judgment for that amount or nothing. The issue was liability. Plaintiff would have to prove the default by defendant followed by compliance with section 9504, subdivision (3). This created uncertainty of liability only. This was the specific holding in *Atlas Thrift Co.* v. *Horan* (1972) 27 Cal.App.3d 999 [104 Cal.Rptr. 315]. In that case the trial court found that a sale of collateral was not conducted as required by section 9504, subdivision (3). However, a judgment was in favor of the secured party for the difference between the balance due on the contract and the actual value of the collateral as found by the court. The sale at less than value was disregarded. The Court of Appeal reversed and held that a failure to comply with section 9504, subdivision (3), bars any deficiency judgment. The court stated: "The rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment." (*Atlas Thrift Co.* v. *Horan, supra,* 27 Cal.App.3d at p. 1009.)

The judgment should be corrected to include prejudgment interest as requested.

*Attorney Fees.*

The attorneys stipulated during the trial in the presence of the jury that the prevailing party should recover reasonable attorney fees. They further stipulated to the amount of reasonable fees for each party for services

rendered to a stated date and to a formula for computing reasonable fees for subsequent services. No instructions were given on the subject of attorney fees and none requested by the plaintiff. The verdict form provided a place for the jury to enter one figure as total damages if the verdict favored the plaintiff. The amount of the verdict is exactly equal to the deficiency proved plus the amount of the open account. It is apparent that no sum is included for attorney fees.

■ Plaintiff cites no authority and we find none that allows the trial court to correct a jury verdict by adding to it an amount for damages proved and omitted from the verdict. If the judge finds the verdict to be inadequate an additur may be ordered only by granting a motion for new trial on the subject of damages unless the parties accept the increased award. Significantly, plaintiff did not seek a new trial and does not ask for an order that the issue of damages be tried again.

If a verdict is defective as distinguished from erroneous the court should order the jury to correct the defect. The verdict in this case was not defective and no request was made for a direction to the jury to correct or change the verdict. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 290, p. 3095.)

Plaintiff points to *T. E. D. Bearing Co.* v. *Walter E. Heller & Co.* (1974) 38 Cal.App.3d 59 [112 Cal.Rptr. 910] and *Beneficial Standard Properties, Inc.* v. *Scharps* (1977) 67 Cal.App.3d 227 [136 Cal.Rptr. 549]. These cases do establish that a party entitled to attorney fees under Civil Code section 1717 has an election to recover those fees as damages or to include the attorney fees as an item in the cost bill. The trial court observed that there had been an election to submit the question to the jury. That is apparently plaintiff's position also as it made no claim for attorney fees in a cost bill and instead tried to obtain a change in the verdict.

Plaintiff should have offered instructions and a form of verdict that would have assisted the jury instead of relying on a stipulation that was made and apparently forgotten. Plaintiff had two avenues of relief. Both are now effectively closed.

The judgment is modified by adding to the judgment in favor of Clark Equipment Company the sum of $68,625.94 plus interest at the rate of 7 percent on $3,138.64 from January 1, 1970, to the date of judgment and interest at the rate of 7 percent on $65,487.30 from October 1, 1971, to date of judgment, and as so modified the judgment is affirmed. The trial

court is directed to enter a new judgment in accordance with this modification.

Costs on appeal awarded to plaintiff Clark Equipment Company.

Brown (G. A.), P. J., and Hopper, J., concurred.