SAVAGE CONSTRUCTION, INC. AND JOHN TOM ROSS, APPELLANTS AND CROSS-RESPONDENTS, *v.* CHALLENGE-COOK BROS., INC., RESPONDENT AND CROSS-APPELLANT.

No. 16215

February 20, 1986 714 P.2d 573

*Robert A. Grayson,* Carson City, for Appellants and Cross-Respondents.

*Allison, Brunetti, MacKenzie, Hartman, Soumbeniotis & Russell,* Carson City, for Respondent and Cross-Appellant.

# OPINION

*Per Curiam:*

## Factual and Procedural Background

In the spring of 1979, Challenge-Cook Bros., Inc. (Challenge-Cook) entered into negotiations with Savage Construction, Inc. (Savage) and John Tom Ross (Ross) for the purchase and sale of four cement mixers. These negotiations led to the contract purchase, by Savage, of the cement mixers. The installment contract provided that it should be interpreted under California law, which brings the contract under the California version of the Uniform Commercial Code. After the installment payments became delinquent, Challenge-Cook peacefully repossessed the equipment in September of 1981. Challenge-Cook then caused the publication of notice of a public sale, to be held October 15, 1981, in San Leandro, California, in three publications; October 4th, 11th and 14th in the *Nevada Appeal,* once on October 5th in the *Inter-City Express* and once October 9th in the *Daily Pacific Builder.* Challenge-Cook, the only bidder at the public sale, purchased the equipment for the amount of their own in-house appraisal of $39,500 per cement mixer. Within two weeks after the auction, Challenge-Cook sold two of the cement mixers for a combined cash price of $99,000, plus tax, and the other two cement mixers for a total of $94,000, plus tax, on a conditional sales contract. The record indicates that the source of at least one of these purchases was negotiating with Challenge-Cook before the auction regarding a retail purchase of the equipment; however, Challenge-Cook did not notify that potential purchaser of the upcoming auction.

Challenge-Cook filed suit to recover a deficiency judgment. The case was tried to the court, which found Savage and Ross liable for the deficiency but, nevertheless, credited Savage and Ross with the price received by Challenge-Cook in its retail sale of the equipment.

Subsequent to the judgment, Savage and Ross filed a motion to retax and settle costs. This motion was denied. Challenge-Cook also filed a motion to alter or amend judgment. This motion was also denied. This appeal, seeking to set aside the deficiency judgment, followed. The cross-appeal by Challenge-Cook requests the recomputation of the amount of the deficiency judgment.

## The Appeal

Initially, we note that because the parties intended that California law govern this matter, we have deferred to the law of that jurisdiction.

Appellants first contend that the public auction that occurred after the repossession of the equipment was not "commercially reasonable." We agree. They point to a number of factors that support this position: the quality of the publicity, the price obtained at the auction, the price obtained at a subsequent retail sale that took place within two weeks of the auction, the number of bidders in attendance at the auction, and the respondent's failure to advise known potential purchasers of the scheduled auction. We will examine each of these factors individually.

The law is clear that "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by a secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." Clark Equipment Co. v. Mastelotto, Inc., 87 Cal.App.3d 88, 96 (1978). However, the conditions of the sale must be reasonably calculated to bring the fair market price that is equitable to both the debtor and the secured party. General Elec. Credit Corp. v. Bo-Mar Construction Co., 72 Cal.App.3d 887, 889 (1977). Since a secured creditor is generally in the best position to influence the circumstances of sale, it is reasonable that the creditor has an enhanced responsibility to promote fairness.

*The Quality of Publicity*

Section 9504(3) of the California Commercial Code requires that "Notice of the time and place of a public sale shall also be given *at least five days before the date of sale* by publication once in a *newspaper of general circulation published in the county in which the sale is to be held.*" (Emphasis added.) In order to meet the requirements of Section 9504(3), Challenge-Cook was required to advertise the sale:

1. At least five days before the sale;
2. In a paper of general circulation; and
3. In a paper published in the county in which the sale is to take place.

The sale in the instant case took place in San Leandro, California. The publications used to meet the legal requirements were the *Nevada Appeal,* the *Inter-City Express* and the *Daily Pacific Builder.* There is no question that the advertisements used were timely. The *Nevada Appeal,* however, is not published in the county where the sale took place. The record shows that the other two papers were used without knowledge of circulation or readership.

Publicity is intended to encourage competitive bidding. The sources of advertising utilized by Challenge-Cook were notably

inefficacious in light of the fact that Challenge-Cook was the only bidder at the auction.

### The Price Obtained at the Auction and the Subsequent Retail Sale

A public auction need not bring in the highest possible price. *See Clark Equipment Co., supra,* 87 Cal.App.3d at 96. However, the conditions of sale must be reasonably calculated to facilitate a sale at fair market value, whether wholesale or retail. *See Bo-Mar, supra,* 72 Cal.App.3d at 889. So, in the instant case, the price received at the subsequent retail sale, held within two weeks of the auction sale, is an indicator of fair market value of the equipment. *See* Kobuk Engineering & Contracting Services, Inc. v. Superior Tank & Constr. Co-Alask, Inc., 568 P.2d 1007 (Alaska 1977).

Using the price received at the subsequent retail sales as an indicator of fair price, it is difficult for this Court to justify the actions of the district court in computing Ross' and Savage's deficiency judgment. The district court held that the public auction was commercially reasonable. Yet appellants were given credit based on the subsequent retail sale. We find no basis for this in the law. If the public auction was commercially reasonable, it follows that the price received at the earlier sale should have been credited to appellants' remaining indebtedness. If the public auction was not commercially reasonable then, under California law, no deficiency judgment is allowed. *See* Atlas Thrift Co. v. Horan, 27 Cal.App.3d 999 (1972).

### The Number of Bidders in Attendance at the Auction

It is important to advertise a public sale properly in order to provide public notice to a potential buying audience, but the actual goal is to have bidders attend the auction. When no one attends the auction, there are many inferences that may be drawn. The lack of attendance and the purchase of collateral by a secured party does not necessarily indicate improper notice. In fact, the California Commercial Code permits a secured creditor, following repossession, to purchase collateral for himself "provided he acts in a good faith and commercially reasonable manner." *Bo-Mar, supra,* 72 Cal.App.3d at 889. However, the fact that the same advertising efforts are used for many years and never produce anyone other than the secured party may indicate either a lack of good faith or inadequate and ineffective publication on the part of the secured party.

### The Respondent's Failure to Advise
### Potential Buyers of the Auction

When a sale is being advertised to an open but unknown market, then the normal minimum legal requirements for commercial reasonableness of an auction may be sufficient. But when, as in the instant case, potential buyers are identified and not advised of the auction, then there is a breach of duty by the secured party. *See* Connex Press, Inc. v. International Airmotive, Inc., 436 F.Supp. 51 (D.C.Dist.Cal. 1977).

### Conclusion

We .have carefully considered all the factors involved in Challenge-Cook's public auction. We have also considered the approach taken by the district court in determining the deficiency assessed against appellants. We conclude that the district court erred when it determined that the auction was commercially reasonable, but that appellants should be credited with the price received by Challenge-Cook from the subsequent retail sale. We also conclude that the respondent's public sale was not commercially reasonable for the reasons previously specified, and in particular, because potential buyers had been identified but were not advised of the upcoming auction sale. Therefore, the judgment of the district court is reversed and the case is remanded to the trial court for entry of judgment in favor of the appellants and a determination of costs and attorney's fees, if any.

Due to our disposition of this appeal, it is unnecessary to address the issue regarding appellant Ross' execution of a personal guaranty. Likewise, there is no need to consider those issues raised on cross-appeal and we make no decision with regard to them.