TIMOTHY DENNISON, Appellant, v. ALLEN GROUP LEASING CORP., Respondent.

No. 23548

March 30, 1994                    871 P.2d 288

*Kevin C. Sewell,* Las Vegas, for Appellant.

*Wanderer & Wanderer* and *Nancy Killeen,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

### FACTS

On April 1, 1987, appellant Timothy Dennison entered into a sixty-month lease with respondent Allen Group Leasing Corp. ("Allen") for two pieces of automobile repair equipment: a Model #53-500 EPA Monitoring Machine (plus 02) and a Model #62-010 Smart Engine Analyzer. Allen claims that Dennison quit making lease payments in August of that same year. Dennison insists that he made timely payments until December, 1987, when he left the failing business to a partner. In any event, Allen repossessed the equipment from Dennison's former partner in early 1988.

On March 3, 1988, Allen sent to Dennison's home address a "notice of public sale of repossessed personal property." The notice informed Dennison that the repossessed equipment, identified as an "Allen Engine Analyzer Model #53-350; 62-110; 60-080," would be sold on April 8, 1988. Dennison, denying receipt of the notice, did not attend the sale.

The equipment identified in the notice of sale may or may not be the same equipment Dennison leased from Allen. The lease identified two pieces of equipment; the notice of sale only identified one. Moreover, the equipment title and model numbers in the notice of sale are different from the title and model numbers contained in the lease, and the serial numbers identified in the notice of sale do not exactly correspond to the serial numbers identified in the lease.

The discrepancy between the equipment specified in the lease and the items repossessed and purportedly resold was widened by the financing statement Allen filed with the California Secretary of State. Like the notice of sale, the financing statement only refers to one piece of leased equipment, an "Allen Engine Analyzer," which is not so described or identified in the lease. Unlike the notice of sale, however, the financing statement refers to "Model #62-010," which does correspond to the model number of the engine analyzer set forth in the lease. Allen sought to dispel the apparent inconsistencies between the various documents by submitting affidavits from two of its employees.[1]

According to Allen, Dennison's total obligation under the lease at the time the equipment was sold was $27,637.68. The equipment allegedly resold for $16,234.87, leaving a deficiency of $11,402.81. However, a rebate of unearned interest reduced the deficiency amount to $5,590.26. There are no details of the public sale in the record and there is no record evidence to support Allen's contention that Dennison's total liability was $27,637.68 at the time of the sale, or that the repossessed equipment was sold for $16,234.87.

Both parties agree that California law applies. Section 9504(3) of the California Commercial Code requires Allen to publish notice of the public sale in a "newspaper of general circulation published in the county in which the sale is to be held." Allen presented an invoice from the *L.A. Times* that it claims is a "true

---

[1]The affidavit of Rene Garret simply states:

> The equipment listed on the face of Mr. Dennison's lease is the same equipment which was repossessed and sold at the public auction in California. The model number of the engine analyzer 53-500 is the same equipment as model number 53-350.

The affidavit of Richard Schoren is similarly brief:

> On the face of the lease and on the face of [sic] lease application form in my handwriting I entered the description of the equipment. The model number 53-500 EPA machine plus 02 Smart Engine Analyzer is the same model 53-350 of the same piece of equipment. I also wrote quantity two (2) of item number 62-010. This is the short hand description for two (2) components with model numbers 62-110 and 60-080 which complete the engine analyzer system. These two (2) items are the rack that the analyzer sits on and the tool box combo.

and correct copy . . . proving advertisement of the sale of the repossessed equipment." The invoice contains no reference to Dennison, Dennison's business, or the subject equipment. More importantly, the invoice does not reveal the content of the purported advertisement, nor is a copy of the advertisement found in the record. Absent Allen's above-referenced assertion, there is no discernible relationship between the invoice and Dennison or the leased equipment. In fact, there is nothing in the record to indicate that a public sale of the repossessed equipment ever occurred.

Allen filed a very brief, one and one-half page motion for summary judgment, with no supporting documents or affidavits.[2] Dennison responded by challenging the identification of the equipment that was repossessed and purportedly resold, the reasonableness of the public sale, and the amount of the deficiency. The district court granted summary judgment in favor of Allen and this appeal followed.

## DISCUSSION

Summary judgment is only appropriate when no genuine issues of material fact remain for trial and the moving party is entitled to judgment as a matter of law. NRCP 56(c). When considering a motion for summary judgment, district courts must review the record in the light most favorable to the party against whom the summary judgment is sought. A party is entitled to a trial when there is the slightest doubt as to any material facts. Walker v. American Bankers Ins., 108 Nev. 533, 536, 836 P.2d 59, 61 (1992).

Dennison concedes that the lease is in default and that he *may* owe a deficiency payment to Allen. However, Dennison contests Allen's depiction of the facts and argues that genuine issues of material fact exist with regard to the identity of the equipment resold by Allen, the commercial reasonableness of the sale, and Allen's calculation of the deficiency amount. Allen, minifying Dennison's assignments of error as "non-issues," claims there are no genuine issues of material fact because Dennison admits signing the subject lease, he has produced no evidence that the debt has been paid, and he has not produced any evidence to show that he is not liable for the deficiency resulting from the sale.

Although each of the material facts Dennison discusses may eventually be resolved in favor of Allen, they are currently in dispute and necessitate remanding the matter back to the district court for trial.

---

[2]Allen's response to Dennison's opposition contained the Allen employee affidavits.

## 1. *The improperly identified equipment*

The lease specifically identifies two pieces of equipment; in contrast, the notice of sale identifies only one. It is impossible to determine from the record if the two documents refer to the exact same equipment. The notice of sale differs from the lease, in part, with respect to the equipment name and serial numbers, and is completely different with respect to the model numbers. Moreover, neither the financing statement filed by Allen nor the "Deficiency Balance" statement produced by Allen contain exact references to the equipment identified in the original lease. In sum, there is no telling what equipment was sold by Allen at the public sale, and based upon our holding in Clauson v. Lloyd, 103 Nev. 432, 743 P.2d 631 (1987), we refuse to accept the Allen employee affidavits as being dispositive of the issue.

In *Clauson,* a medical doctor was sued for malpractice. The doctor was granted summary judgment on the basis of his own self-serving affidavit that he had "performed according to the standard of practice, learning, and skill ordinarily practiced by medical practitioners in the community." *Id.* at 433, 743 P.2d at 632. We reversed the summary judgment because the affidavit was too general to show there were no genuine issues of material fact. More importantly, we refused to rely upon the affidavit without an accompanying means of validation:

> Were we to hold that the affidavit in this case is strong enough to support a summary judgment motion, the effect would be chilling: any defendant physician could come into court, file a motion for summary judgment alleging solely that he conformed to the applicable standard of care without any valid supporting documentation and if the plaintiff did not procure an expert to refute the charge, his case would be thrown out.

*Id.* at 435, 743 P.2d at 633.

Although *Clauson* deals with medical malpractice, the chilling effect mentioned therein is equally applicable to this case. Allen failed to show *why* "the equipment listed on the face of Mr. Dennison's lease is the same equipment which was repossessed and sold at public auction in California," and we refuse to affirm a summary judgment that is premised upon a bare record and unsupported affidavits.

## 2. *The commercial reasonableness of the public sale*

We have previously held that public sales of repossessed equipment must be commercially reasonable. Savage Constr. v.

Challenge-Cook, 102 Nev. 34, 37, 714 P.2d 573, 574 (1986) (construing California Commercial Code § 9504(3)). The conditions of a commercially reasonable sale should reflect a calculated effort to promote a sales price that is equitable to both the debtor and the secured creditor. *Id.* at 38, 714 P.2d at 575. The "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance" are important factors to consider when analyzing the commercial reasonableness of a public sale. *Id.* at 37, 714 P.2d at 574. It is impossible to determine the quality or potential efficacy of Allen's publicity concerning the sale because we are unable to review the actual advertisement that was purportedly published in the *L.A. Times.* Allen simply argues that the invoice conclusively proves that it complied with the California notice statute. We disagree.

The invoice does not contain any reference to Dennison or the particular equipment that was due to be sold; it only shows that Allen was responsible for a nine-line advertisement published on April 3, 1988. The content of the advertisement is critically important to its purpose: attracting the proper kinds of prospective bidders. Without the advertisement, we must conclude that the quality of the publication was deficient.

A further indication of commercially unreasonable publicity may be found in the price obtained for the equipment and the number of bidders in attendance at the public sale. The record is bereft of evidence concerning these two aspects of the sale, thus preventing a meaningful analysis of the subject. We disagree with Allen's assertion that, "[i]t is . . . undisputed that [Allen] recovered the Engine Analyzer and sold it in Santa Fe Springs for $16,224.87." The only evidence of the purchase price is provided by an inadequate one-line entry in Allen's "Deficiency Balance" statement. Dennison acknowledges Allen's statement, but emphasizes the dearth of corroborative evidence in the record. Finally, the record is completely devoid of any evidence relating to the bidding process or participants.

## CONCLUSION

It is possible that the equipment sold at public sale by Allen was not the same equipment leased to Dennison. It is equally possible that the public sale was not commercially reasonable. We are simply unable, on this record, to fairly review these issues in support of the summary disposition entered below. Therefore, we need not examine Allen's calculation of Dennison's remaining liability, the accuracy of which is also subject to question at this point. The party moving for summary judgment has the burden of

establishing the non-existence of any genuine issue of material fact, and Allen has failed to meet this burden.

For reasons discussed above, the summary judgment is reversed and the matter is remanded to the district court for trial.